# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MELVIN COLLINS,                                  :

           Plaintiff,                      Case No. 3:12-cv-089

    -vs-                                                     District Judge Herbert Walter Rice
                                                                      Magistrate Judge Michael R. Merz

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.                      :

# REPORT AND RECOMMENDATIONS

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

1

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365   (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).   However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d   437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Previously, based on his application for benefits under the Act, Plaintiff received a closed period of disability and disability benefits from February 15, 1986, through January, 1991. See PageID 160. The present matter involves Plaintiff's application for SSD which he filed on June 11, 2009. PageID 147-50. In that application, Plaintiff alleged disability from January 2, 2001, due to depression, back pain, diabetes, and hypertension. PageID 147, 164. The Commissioner denied Plaintiff's application initially and on reconsideration. PageID 41, 42, 102-04, 106-08. Administrative law Judge Howard Treblin held a hearing, PageID 83-97, following which he determined that Plaintiff is not disabled. PageID 65-74. The Appeals Council denied Plaintiff's

3

request for review, PageID 58-60, and Judge Treblin's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Treblin found that he last met the insured status requirements of the Act on June 20, 2005. PageID 67, ¶ 1. Judge Treblin then found that through his date last insured, Plaintiff had the following medically determinable impairments: feet impairment, hypertension, diabetes mellitus, Barrett's esophagus, gastritis, and depressive disorder and that although there are clinical signs and findings documented in the record showing that Plaintiff had those impairments during the period under adjudication, they neither singly nor in combination caused more than minimal functional limitation. *Id.,* ¶ 3. Judge Treblin also found that through his date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for twelve consecutive months and therefore he did not have a severe impairment or combination of impairments. *Id.*, ¶ 4. Judge Treblin concluded that Plaintiff was not disabled at any time from January 2, 2001, his alleged onset date, through June 20, 2005, the date last insured and therefore was not entitled to benefits under the Act. PageID 73.

The record contains a copy of Plaintiff's voluminous treatment notes from Daymont Behavioral Health Care dated February 5, 2001, through January 24, 2011. PageID 226-78; 358-86; 666-91; 1516-30. Those records reveal that over time, Plaintiff received mental health treatment at Daymont for major depression, recurrent. *Id.*

On August 7, 2007, Dr. Kuruvilla, Plaintiff's treating psychiatrist at Daymont, reported that she first saw Plaintiff on May 11, 2005, although he had been under the care of other psychiatrists at Daymont since 1987. PageID 392-96. Dr. Kuruvilla also reported that Plaintiff's

4

affect was shallow and constricted, his mood stayed euthymic, dealing with people made him very guarded and consequently he isolated himself, he was paranoid in his thinking, was oriented, and that his concentration appeared normal. *Id.* Dr. Kuruvilla reported further that Plaintiff's memory was intact, he displayed concrete thinking, was of average intelligence, had very superficial insight and normal judgment, had a fair response to medications, was able to remember and understand directions although orders or directions from others made him very anxious, was able to concentrate although he could not persist at tasks and complete them in a timely fashion, and that he was able to maintain attention. *Id.* Dr. Kuruvilla noted that Plaintiff's abilities with respect to social interaction, adaption, and reacting to pressure in work-settings were very poor. *Id.*

Dr. Kuruvilla reported on January 6, 2011, that Plaintiff had not worked for many years, his abilities to make occupational adjustment were good to fair to poor, he isolated himself and did not interact with others often, he was very quiet and preoccupied with his own thoughts most of the time, his abilities to make personal-social adjustments were good to fair, he was not motivated to do any work-related activities, and that he was not sure that he could handle any benefits in his own best interest. *Id.*

The record contains a copy of the voluminous office notes of treating physician Dr. Kominiarek dated November 9, 2007, through January 3, 2011. PageID 325-54; 708-1530. Those records reveal that over time, Dr. Kominiarek treated Plaintiff for various medical conditions including ankle and back pain. *Id.*

On July 9, 2009, Dr. Kominiarek reported that he had been treating Plaintiff since 200 [sic], for ankle and back pain, that he had limited flexion, extension, and rotation of his spine, muscle weakness, reflex abnormalities, muscle spasms, and muscle atrophy of his lower back, and that he

5

used a cane. PageID 325-26.

Dr. Kominiarek reported on December 2, 2010, that Plaintiff was able to lift/carry up to ten pounds frequently, stand/walk and sit each for less than one hour in an eight-hour day and for less than one hour without interruption, could never climb, balance, stoop, crouch, kneel, or crawl, and that his abilities to see, hear, reach, handle, finger, feel, and push/pull were affected by his impairments. PageID 692-706. Dr. Kominiarek also reported that Plaintiff should not be exposed to heights, moving machinery, chemicals, temperature extremes, vibration, dust, noise, fumes, and humidity, and that he was unable to perform sedentary, light, or medium work. *Id.* Dr. Kominiarek opined that Plaintiff was unable to perform normal labor and that his (Dr. Kominiarek's) opinion as to Plaintiff's abilities was supported by his findings on physical examination. *Id.* Dr. Kominiarek also opined that Plaintiff was not able to perform any work-related mental activities and that he had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting his treating psychiatrist's and treating physician's opinions. Doc. 11. Plaintiff also alleges that the Commissioner erred by failing to find that he has a severe physical impairment and by failing to find that he was entirely credible. *Id.*

A key question in this case is the severity of any of Plaintiff's impairments before the expiration of his insured status. A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted). The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement of the Act. *Id.* (citation omitted); *Moon v.*

6

*Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990). Post insured status evidence of a claimant's condition is generally not relevant. *Bagby v. Harris,* 650 F.2d 836 (6th Cir. 1981); see also, *Bogle v. Secretary of Health and Human Services,* 998 F.2d 342 (6th Cir. 1993). However, such evidence will be considered if it establishes that an impairment existed continuously and in the same degree from the date the insured status expired. *Johnson v. Secretary of Health and Human Services,* 679 F.2d 605 (6th Cir. 1982). As noted above, Plaintiff's last met the insured status requirement of the Act on June 20, 2005. Therefore, Plaintiff must establish that he became disabled on or before that date.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581

7

F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

> administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In August, 2009, and again in January 6, 2011, Dr. Kuruvilla, Plaintiff's treating psychiatrist, essentially opined that was disabled by his mental impairment. Although Judge Treblin accorded "some weight" to Dr. Kuruvilla's August, 2009, he determined, *inter alia,* that Dr. Kuruvilla's opinion did not relate to any time prior to the expiration of Plaintiff's insured status. PageID 72-73.

First, Dr. Kuruvilla offered her August, 2009, opinion more than four years after Plaintiff's insured status expired and her January, 2011, opinion about five and one-half years after the expiration of Plaintiff's insured status. In addition, Dr. Kuruvilla did not relate either of those opinions back to any time prior to June 20, 2005, when Plaintiff's insured status expired. Although acknowledging that Plaintiff had received treatment from other mental health care providers at DayMont since 1987, Dr. Kuruvilla did not rely on or cite to any of those prior treating sources records or opinions to support a conclusion that her opinion related back to the relevant period.

9

Further, Dr. Kuruvilla reported that she began treating Plaintiff in May, 2005, only one month prior to the expiration of Plaintiff's insured status.[2]

Under these facts, the Commissioner did not err by rejecting Dr. Kuruvilla's opinions on the basis they do not relate to any time prior to the expiration of Plaintiff's insured status.

Plaintiff also alleges that the Commissioner erred by rejecting treating physician Dr. Kominiarek's opinion.

On December 2, 2010, Dr. Kominiarek reported that Plaintiff was limited in his abilities to perform exertional activities in that he was able to lift/carry up to ten pounds frequently, stand/walk and sit each for less than one hour in an eight-hour day and for less than one hour without interruption, could never climb, balance, stoop, crouch, kneel, or crawl, and that his abilities to see, hear, reach, handle, finger, feel, and push/pull were affected by his impairments.[3] In choosing to give Dr. Kominiarek's opinion little, if any, weight, Judge Treblin found that, like Dr. Kuruvilla's opinion, Dr. Kominiarek's opinion did not relate to a time prior to the expiration of Plaintiff's insured status. PageID 73.

Dr. Kominiarek offered his opinion as to Plaintiff's residual functional capacity in December, 2010, more than five years after the expiration of Plaintiff's insured status. In addition, the record reveals that Dr. Kominiarek did not begin to treat Plaintiff until November 9, 2007, more than two years after the expiration of Plaintiff's insured status. Further, similar to Dr. Kuruvilla's opinions, Dr. Kominiarek's opinion does not relate back to any time prior to the expiration of Plaintiff's insured status. While it is arguable, as Judge Treblin noted, that Plaintiff's

---

[2] The record contains an inconsistency as to when Dr. Kuruvilla began treating Plaintiff. In August, 2009, Dr. Kuruvilla reported that she began treating Plaintiff on May, 2005. PageID 392. However, in January, 2011, Dr. Kuruvilla reported that she began treating Plaintiff in February, 2006. PageID 1382.

[3] Dr. Kominiarek also reported that Plaintiff was not able to perform any work-related mental activities. However, Plaintiff's abilities with respect to is alleged mental impairment is outside Dr. Kominiarek's area of expertise.

impairments and his residual functional capacity have worsened over time, Judge Treblin properly rejected Dr. Kominiarek's opinion that Plaintiff was limited by his impairments at any time before his insured status expired.

Plaintiff argues next that the Commissioner erred by failing to find that he was credible. It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom

11

complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In *Felisky v. Bowen,* 35 F.3d 1027, 1039-40 (6th Cir. 1994), the Court set out seven (7) factors which the ALJ is to consider when evaluating a claimant′s subjective complaints. The Court derived those factors from 20 C.F.R. § 404.1529(c)(3). *Id.* However, while the *Felisky* Court applied each of the factors in the case before it, *Felisky* does not require that the ALJ engage in such an extensive analysis in every decision. *Bowman v. Chater,* No. 96-3990, 1997 WL764419 at *4 (6th Cir. Nov. 26, 1997). It does require that in addition to objective medical evidence the ALJ consider non-medical factors. *Id.*

Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996), ("SSR 9607p"), provides that the Commissioner may not disregard a claimant's subjective statements concerning his ability to work "solely because they are not substantiated by objective medical evidence". *See, Saddler v. Commissioner of Social Security,* No. 98-5440, 1999 WL 137621 at *2 (6th Cir. Mar. 4, 1999)[173 F.3d 429 table], *citing,* SSR 96-7p. SSR 96-7p directs the Commissioner to provide "specific reasons" for making a credibility determination. *See, Spicer v. Apfel,* No. 00-5687, 2001 WL 845496 at *1 (6th Cir. July 16, 2001).

In rejecting Plaintiff's subjective complaints and allegations, Judge Treblin considered other, non-medical evidence. PageID 71-72. For example, Judge Treblin noted that Plaintiff stopped working for reasons not related to any alleged impairment to wit, Plaintiff testified that he stopped working because he retired after working for his employer for thirty years. PageID 71. Judge Treblin also noted that Plaintiff did not apply for benefits under the Act until after he retired in 1999 and was collecting retirement benefits. *Id.* Judge Treblin's finding is consistent with the

record. PageID 87-88. In addition, Judge Treblin considered Plaintiff's activities and determined that they were inconsistent with a claim of total disability. PageID 71. Specifically, Judge Treblin noted that Plaintiff watched television, drove, took his wife shopping, went outside daily, spent time with his brothers, and belonged to a motorcycle group. *Id;* see PageID 90; 171-78; 179-86; 245.

Under these facts, the Commissioner had an adequate basis for rejecting Plaintiff's subjective complaints and allegations.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 7, 2013　　　　　　　　　　　　　　　　　*s/ Michael R. Merz*
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served

with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).